[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 08, 2002
THOMAS K. KAHN
CLERK

No. 01-10806

D. C. Docket No. 00-00273-CV-TWT-1

TIBERIO P. DEJULIO,
EVA C. GALAMBOS,

Plaintiffs-Appellants,

versus

STATE OF GEORGIA, ROY E. BARNES,
in his official capacity as the Governor of Georgia, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

**(May 8, 2002)**

ON PETITION FOR REHEARING AND SUGGESTION
OF REHEARING EN BANC

Before BIRCH, COX and ALARCON[*], Circuit Judges.

BIRCH, Circuit Judge:

No member of this panel nor other judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35, Fed.R.App.P. 11th Cir. Rule 35-5), the suggestion of rehearing en banc is DENIED. However, the original panel grants rehearing (although on grounds other than those urged by appellant), withdraws the previous panel opinion dated December 21, 2001, published at 276 F.3d 1244 (11th Cir. 2001), and the following opinion is substituted.

This appeal presents the following issues: (1) whether the procedures by which the Georgia General Assembly considers "local legislation" violate the principle of "one person, one vote," and (2) whether the changes in internal rules and procedures by which the General Assembly enacts local legislation are subject to the preclearance requirement of the Voting Rights Act of 1965, 42 U.S.C. § 1973 et seq., as amended. The district court determined that, although the members of the Georgia General Assembly's local delegations were popularly elected, they did not engage in governmental functions, and, therefore, the "one

---

[*]Honorable Arthur L. Alarcon, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

2

person, one vote" requirement did not apply. Regarding the second issue, the district court found that the preclearance requirements of the Voting Rights Act did not apply to the changes in the General Assembly. We AFFIRM.

## I. BACKGROUND

The legislative power of the state is vested in the General Assembly, which consists of a House of Representatives and a Senate.[1] Ga. Const., art. III, § 1, ¶ 1. Both the House and Senate have adopted their own rules to govern organization and basic rules of operation.[2] Local legislation, which is legislation that applies to a specific city, county, or special district, comprises a large part of the bills introduced and enacted by the General Assembly each year.[3] Because of this volume, the House and the Senate have adopted local delegations for the consideration of local legislation. Each county, municipality, or other jurisdiction

---

[1] Hereinafter, the Georgia House of Representatives and Georgia Senate will be referred to respectively as "House" and "Senate."

[2] The district court took judicial notice of the 2000 Rules of the Georgia House of Representatives and the 2000 Rules of the Georgia Senate. DeJulio v. Ga., 127 F. Supp.2d 1274, 1284 (N.D. Ga. 2001).

[3] Local legislation is introduced to change city boundaries, create local authorities, or make other changes that apply only to the particular political subdivision named in a bill. Approximately one-third of all legislation enacted during the General Assembly's 2000 session was local legislation. DeJulio, 127 F. Supp.2d at 1280. In 1999, local legislation constituted 52.5% of all enacted legislation. Id.

3

has a local delegation and any legislator whose district encompasses territory within a specific city or county is a member of the local delegation for that entity.

The local delegations make recommendations to the House and Senate standing committees, which then recommend local legislation to the entire body[4]. A local bill must receive the requisite majority from the local delegation to be reported favorably out of the standing committees with a "do pass" recommendation. Absent local delegation rules filed in the House Standing Committee, unanimous support from the local delegation is required for the committee to report the legislation favorably to the full House with a "do pass" recommendation.[5] Similarly, Senate Rule 187(u) provides that local legislation must be approved by a majority of the senators who represent the locality in question. If the local delegation is equally divided on the proposed legislation, however, the committee then considers the legislation on its own merits and can report it with either a "do pass" or "do not pass" recommendation.

---

[4] The standing committees are the State Planning and Community Affairs Committee in the House and the State and Local Government Operations Committee in the Senate. Id. at 1280-81.

[5] House Rule 11 provides that a majority of the representatives whose districts lie within a political subdivision may file with the State Planning and Community Affairs Committee their own local rules for consideration of local legislation.

If local legislation has received the requisite number of signatures of representatives and senators whose districts lie partially or wholly within the locality which the legislation affects, it is ordinarily passed on an uncontested basis as a matter of local courtesy.[6] The underlying assumption of local courtesy is that the bill affects only a certain city or county, and, therefore, representatives and senators of other districts should defer to that local delegation's judgment. Local courtesy is a custom, however, and is not provided for in either the House or Senate rules. Should a member of the House or Senate choose to challenge local legislation on the floor, local courtesy is not enforced.[7]

It is undisputed that these challenges seldom happen. The district court noted that "in practice, the local delegations propose all local legislation; and this legislation typically, but not always, is 'rubber-stamped' by the full General Assembly without further discussion or debate." DeJulio, 127 F. Supp.2d at 1281. For local legislation to become law, however, the Governor must sign it within forty days from the end of the legislative session. Id.

---

[6] Both the House and Senate permit numerous local bills to be voted on by the full body through a "local consent calendar" that contains uncontested local legislation. DeJulio, 127 F. Supp.2d at 1281.

[7] Senate Rule 113(e) provides that three senators, only one of whose district must lie within the political subdivision directly affected, may have a particular local bill removed from the local consent calendar by objecting to it in writing.

Plaintiffs-appellants, Tiberio P. DeJulio and Eva C. Galambos (hereinafter "Voters"), filed a voting rights action pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution, and an action to enforce the provisions of the Fourteenth Amendment and the Voting Rights Act of 1965, 42 U.S.C. § 1973 et seq., as amended. Voters alleged that the current procedures for enactment of local legislation of the General Assembly constituted a violation of the "one person, one vote" standard.[8] Additionally, Voters argued that the changes in the General Assembly's internal rules are subject to the preclearance requirement of Section 5 of the Voting Rights Act. DeJulio, 127 F. Supp.2d at 1282. The district court granted summary judgment to the appellees and determined that: (1) the "one person, one vote" requirement did not apply to the General Assembly's local legislative delegations, and (2) the changes in internal rules and procedures by which the General Assembly enacted local legislation were not subject to the Voting Rights Act's preclearance requirements. Id. at 1302. Voters appeal this judgment on both issues.

## II. DISCUSSION

[8] Voters' argument is based on the undisputed population data for Georgia's 159 counties broken down according to the House and Senate Districts located in those counties. Voters allege that a House or Senate member with constituents in the county have one vote on local legislation while another House or Senate member with fewer constituents in the county also has one vote on local legislation affecting the county.

6

We review a district court's grant of summary judgment de novo, apply the same standard as the district court, and review all facts and reasonable inferences in the light most favorable to the nonmoving party. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). Summary judgment is appropriate when "the pleadings, depositions and answers to interrogatories, and admissions on file, together with the affidavits, if any," show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)).

A. *"One Person, One Vote"*

In Hadley v. Junior College Dist., the Supreme Court enunciated the principle of "one person, one vote":

> [W]henever a state or local government decides to select persons by *popular election to perform governmental functions*, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials.

397 U.S. 50, 56, 90 S. Ct. 791, 795 (1970) (emphasis added). Thus, under Hadley, in order for the "one person, one vote" requirement to apply to the General

7

Assembly's local delegations, Voters must show: (1) that the House and Senate delegations are selected by "popular election;" and (2) that these delegations perform "governmental functions." Id.

We agree with the district court that the first element of the Hadley test is clearly satisfied. "When public officials become members of a governmental body simply by virtue of their popular election to the legislature, they are deemed popularly elected for the purposes of the 'one person, one vote' requirement." DeJulio, 127 F. Supp. 2d at 1294. Georgia's local legislative delegations are deemed popularly elected because representatives and senators become delegation members by virtue of their popular election, not through appointment.

As to the second element of the Hadley test, the district court correctly concluded that the Georgia General Assembly's local delegations do not engage in "governmental functions." The Supreme Court has recognized the following functions as governmental: the ability to "levy and collect taxes, issue bonds with certain restrictions, hire and fire teachers, make contracts, collect fees, supervise and discipline students, pass on petitions to annex school districts, acquire property by condemnation, and in general manage the operations of the junior college," Hadley, 397 U.S. at 53-54, 90 S. Ct. at 794, appoint county officials, make contracts, establish and maintain a courthouse and jail, administer the county

8

welfare system, perform duties in connection with elections, set the county tax rate, build roads and bridges, adopt the county budget, build and run hospitals, airports, and libraries, fix school district boundaries, establish a housing authority, and determine the election districts for county commissioners. Avery v. Midland County, 390 U.S. 474, 476-77, 88 S. Ct. 1114, 1116 (1968). This list, however, is non-exhaustive.

Voters claim that, although the local delegations do not carry out any of the listed functions, the delegations engage in "lawmaking," a distinct governmental function, which brings them under the ambit of the "one person, one vote" requirement.[9] They argue that "the local delegations draft, consider, debate, and,

_____

[9] Voters contend that their argument is buttressed by Vander Linden v. Hodges, 193 F.3d 268 (4th Cir. 1999), where the Fourth Circuit concluded that South Carolina's local legislative delegations did engage in governmental functions. However, as the district court points out, Voters' ignore important relevant distinctions between the role of South Carolina's local legislative delegations and those of Georgia. The district court distinguishes Vander Linden by noting:

> A reading of the statutes at issue in Vander Linden shows that South Carolina's local legislative delegations performed local governmental functions either in lieu of or in concert with local governments, depending on the situation. The statutes the Fourth Circuit cited in Vander Linden do not limit the role of South Carolina's local legislative delegations to consideration of local legislation. They instead broadly define the role of South Carolina's local legislative delegations in overseeing and approving local governments' general activities. Indeed most of these statutes explicitly provide that the local legislative delegation, not the entire General Assembly, is the final authority. . .
> In contrast, no final governmental authority is granted to the Georgia General Assembly's local delegations. The Georgia Constitution explicitly provides that the General Assembly *as a whole*, not

9

for all practical purposes, enact all local bills, which the General Assembly merely 'rubber stamps' in ministerial fashion without further discussion or debate." Appellants' Br. at 13.

As Voters point out, a local bill must receive the requisite majority from the local delegation to be reported favorably out of the standing committees with a "do pass" recommendation. It is true, moreover, that if local legislation has received the requisite number of signatures of representatives and senators whose districts lie partially or wholly within the locality which the legislation affects, it is ordinarily passed on an uncontested basis as a matter of local courtesy by the General Assembly.

As the district court noted, however, Georgia law does not codify or require the discretionary deference to local courtesy when either the House or Senate addresses local legislation. Local delegations are made up of individual members of the General Assembly and operate solely within the procedural confines of the legislature itself. Members of the General Assembly can contest local legislation of which they disapprove by removing it from the consent calendar and requiring

_____

specific local delegations, is the legislative authority for Georgia's counties and municipalities.

DeJulio, 127 F. Supp. 2d at 1296-97. We find the district court's reasoning persuasive. Accordingly, Vander Linden is distinguishable from this case.

10

the whole body to vote upon it. Objections to local legislation typically are not pursued; nonetheless, this does not render plenary authority to the local delegations with respect to the enactment of local legislation, as Voters argue. The local delegations only make recommendations to the House and Senate standing committees, which then propose local legislation to the entire body. Local legislation is not officially enacted until it is voted on by a majority of the full House and Senate and signed by the Governor. Thus, the General Assembly, which has undisputedly been apportioned in accordance with the "one person, one vote" requirement, engages in the governmental function of lawmaking, not the local delegations.

B. *Section 5 of the Voting Rights Act*

Section 5 of the Voting Rights Act requires a jurisdiction covered by the Act to obtain either judicial or administrative preclearance before implementing a new "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964."[10]  42 U.S.C. § 1973c (Voting Rights Act of 1965 § 5). If a covered jurisdiction fails to seek preclearance for a proposed voting-law change, a private party injured by that change

---

[10] Georgia is a "covered jurisdiction," as are its "political subunits." 28 C.F.R. Part 1 & § 51.6.

11

can bring an action for a declaratory judgement and injunctive relief by alleging that the change is within the scope of Section 5 and that it requires preclearance. Id.

In this case, Voters, without identifying specific rule changes, argue that the changes in Rules of the General Assembly are subject to preclearance. The preclearance requirements of the Voting Rights Act apply to legislative internal rule changes in only the most limited of circumstances: (1) changes to the manner of voting; (2) changes to candidacy requirements and qualifications; (3) changes to the composition of the electorate; and (4) changes that affect the creation or abolition of an elective office. Presley v. Etowah County Commission, 502 U.S. 491, 493, 112 S.Ct. 820, 823 (1992). In Presley, the Court held that changes in the decision-making authority of elected officials are not changes in voting practices or procedures that require preclearance pursuant to Section 5 of the Voting Rights Act. Id. at 503, 112 S.Ct. at 829. The change "concerns only the internal operations of an elected body and the distribution of power among officials, and, thus, has no direct relation to, or impact on, voting." Id. at 492, 112 S.Ct. at 823. Hence, the district court correctly determined that preclearance requirements did not apply to changes in internal rules and procedures by which the General Assembly enacted local legislation applicable to a specific city, county, or district.

### III. CONCLUSION

12

This case involved the appeal of a grant of summary judgment in which the district court held: (1) the "one person, one vote" requirement did not apply to the General Assembly's local legislative delegations, and (2) the changes in internal rules and procedures by which the General Assembly enacted local legislation were not subject to the Voting Rights Act's preclearance requirements. Local delegations do not perform governmental functions, which would bring them under the "one person, one vote" requirement. Further, preclearance is not required because changes in the decision-making authority of elected officials are not changes in voting practices or procedures that require preclearance pursuant to Section 5 of the Voting Rights Act. We AFFIRM the judgment of the district court.